**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 0 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

JIAN WANG,

                Petitioner,

      -against-

UNITED STATES OF AMERICA,

                Respondent.

---------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

10 Civ. 4425 (BMC)

**COGAN,** District Judge.

Petitioner Jian Wang brings this petition for a writ of habeas corpus under 28 U.S.C. § 2255 to vacate his guilty plea and the sentence imposed by this Court. He claims that he received ineffective assistance of counsel, resulting in his entering into a guilty plea unknowingly and involuntarily. Because I find that his allegations are not credible, as they contradict the record and the sworn statements of his former attorney, the interpreters who translated for him, and his statements on the record at his guilty plea hearing, I dismiss the petition and order him to surrender on January 28, 2011.

## BACKGROUND

### I.    Pre-petition

Jian Wang was a defendant in the criminal and civil proceedings that were instituted in this Court after an investigation uncovered a sophisticated distribution organization that produced, stored, and sold counterfeit goods, including more than 4 million counterfeit condoms. Wang was the owner of a "Dollar 99" store that sold these condoms. In the criminal proceeding, he pled guilty to one count of trafficking and attempting to traffic in counterfeit goods, in

1

violation of 18 U.S.C. § 2320(a). The Court sentenced him to 37 months in prison (the high end

of the guidelines range), 3 years of supervised release, and imposed a fine of $3,000.

Less than a month later, Wang requested that the Court stay his surrender date pending

his filing of a motion to withdraw his guilty plea. The Court denied this request. Wang then

commenced this proceeding pursuant to 28 U.S.C. § 2255, claiming, *inter alia*, that ineffective

assistance of counsel caused him to enter into a plea agreement without adequately appreciating

the consequences. He again asked that the Court stay his surrender date pending its decision on

his petition, a request to which the Government consented and the Court has ordered.

## II.    The Habeas Petition

Wang argues that ineffective assistance of counsel and faulty translation of court

proceedings caused him to unknowingly and involuntarily enter into his plea agreement. As a

result, he argues, the provision in the plea agreement that prevents him from a filing a petition

pursuant to 28 U.S.C. § 2255 is invalid.

Wang asserts that he entered the plea agreement without *any* assistance of counsel,

although his allegations seem to raise insufficient communication, deficient advice, and even

coercive behavior by his attorney. Indicative of the many allegations leveled at the attorney and

the interpreters is Wang's account of one crucial encounter. According to him, at a meeting with

his attorney and an interpreter to discuss the plea agreement, the attorney exited the room,

leaving it to the interpreter – whose translation "was subpar at best" – to interpret his rights.

When the attorney returned, he allegedly induced Wang to enter into the plea agreement without

apprising him "of even the most fundamental principles of a criminal proceeding." Wang claims

that by becoming visibly agitated – slamming his hands on the table and screaming at Wang –

the attorney gave Wang the impression that he would not undertake any efforts to mount a

2

defense at trial. Wang suspects that the attorney even "urged the interpreter to persuade the defendant into entering the plea agreement;" the interpreter then reportedly advised Wang to take the plea.

More generally, Wang asserts that the attorney failed to inform Wang of the rights he was giving up by not proceeding to trial, and painted an unrealistic picture of the discrepancy between Wang's sentencing exposure at trial and the term he would likely receive if he accepted the plea, which according to Wang, his attorney estimated would amount to "at worst, a few months of incarceration." As a result, Wang argues, the attorney turned in a performance, prior to the plea agreement, that was objectively deficient, resulting in prejudice to Wang because had he been fully informed, he would not have pled guilty.

Instead of retaining new counsel, Wang signed the plea agreement. He concedes that at the plea hearing before this Court, it *appeared* that he entered into the plea knowingly and voluntarily. According to Wang, however, his attorney had instructed him to memorize a pre-written statement and "to merely say 'yes' to ensure the plea hearing proceed[ed] smoothly otherwise he would be automatically subject to a ten [] year term of imprisonment and a two million dollar [] fine." He further alleges that the interpreter not only failed to properly translate the proceeding, but, according to Wang, even stepped in to read from Wang's prepared statement when Wang did not state the factual basis of his offense. Part of the reason for the faulty translation, Wang asserts, was that the primary dialect of the interpreters used throughout the criminal proceeding was Cantonese rather than Mandarin, the latter of which is a dialect that Wang understands, although his primary dialect is Wenzhounese.[1]

---

[1] Various assertions about the interpreters' failings are scattered throughout Wang's opening brief. For instance, one of the interpreters allegedly "engaged in unprofessional conduct by volunteering erroneous and unprofessional legal advice . . . [and] volunteered additional information to the defendants instead of providing verbatim translations." Wang also claims that the interpreter at the proceeding incorrectly translated the province where Wang was born.

Wang claims that his attorney's deficient performance continued after the plea hearing. When Wang expressed his desire to withdraw the plea, his attorney allegedly refused to help him and did not explain that he could retain new counsel. Wang also asserts that at the sentencing hearing, his attorney failed to mention relevant mitigating factors, which resulted in a less favorable sentence.

## III.    Government's Response

In response, the Government has submitted affidavits of two of Wang's interpreters as well his former attorney. Patsy Ong – the court-certified interpreter at the plea hearing – states that she "is equally comfortable translating either Cantonese or Mandarin" even if Cantonese is her native dialect. She denies Wang's specific allegations as well as his general assertion about intentional misinterpretation of his statements, calling them "brazen and false." Ong affirms that Wang never advised her that he was having difficulty understanding Mandarin, and that "[a]t the time of his plea, Mr. Wang appeared to fully understand what the questions were that he was answering."

The Government has also submitted Lily Lau's affidavit, who, it represents, translated for Wang at a court conference and at four meetings between Wang and his former attorney. Like Ong, Lau is court-certified to translate in Mandarin and, like Ong, she is as "comfortable translating . . . Mandarin" as she is interpreting her native dialect. She echoes Ong's affirmation that Wang never appeared or expressed difficulty understanding Mandarin and denies ever providing Wang with advice about his plea agreement.

Finally, the Government has submitted the affidavit of Wang's former attorney, Glenn A. Obedin. Obedin claims that "[a]t all times, I told the petitioner that entering into the plea agreement was one of his options but he had other options including going to trial." According

4

to the affidavit, Obedin explained what proceeding to trial entailed, telling Wang that even if he were to receive a guilty verdict, "the court might view his situation sympathetically." He attests that he "repeatedly" advised Wang that although a lower sentence was possible if he pled guilty, he might also get the guideline sentence of 30-37 months. As for Wang's charge that he precluded Wang from withdrawing his plea, Obedin responds that he "advised Wang that the only possible basis for withdrawing his plea was an assertion that he did not understand the plea . . . . [and that] he was free to obtain other counsel [to make the motion to withdraw]."

## IV.  Procedural Background

The petition, although verified by Wang, was essentially in the form of a brief, containing argument and citation to authority. It was supported only by an affidavit from the attorney who drafted it, and by an additional memorandum of law that accompanied it. With its response, the Government submitted the affidavit from Wang's former attorney described above and gave a detailed proffer of how the interpreters would deny Wang's allegations. Wang submitted his own affidavit only in reply. Nowhere in that affidavit did Wang claim that he would not have entered into the plea agreement had it not been for his former attorney's ineffective assistance or the interpreters' faulty translations.

I declined to rule on the submissions. Instead, following the roadmap set forth in Chang v. United States, 250 F.3d 79 (2d Cir. 2001), discussed below, I held a status conference.[2] At the conference, I pointed out to petitioner's counsel that a verification of an attorney's submissions does not have the same weight as a petitioner's own affidavit. See Puglisi v. United States, 586 F.3d 209, 216-17 (2d Cir. 2009) ("[a]dopting wholesale the . . . brief written by counsel . . . is fundamentally different from swearing to particular statements made in one's own name"). Likewise, the Government's initial response – likely prompted by Wang's thin submission – also

---

[2] For this conference, I invited petitioner – and his retained counsel – to bring an interpreter of his own choosing.

lacked sufficient evidentiary weight concerning the interpreters. I therefore scheduled supplemental briefing and indicated that I would accept further evidence, after which I would decide whether to require live witnesses.

The parties have since submitted additional affidavits from Wang and from two of his interpreters, but disagree whether an evidentiary hearing is required or whether the "intermediate step" taken by the Court of expanding the record is sufficient. The Government argues that Wang's assertions are clearly contradicted by the record in the criminal proceeding, and the petition should therefore be dismissed without a further hearing. Wang disagrees, pointing to the "off-the-record transactions" that underlie his claims and the factual disputes between the submitted accounts.

## DISCUSSION

### I.     The Petition Is Without Merit

The Sixth Amendment guarantees criminal defendants the right to an effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668 (1984). Therefore, an ineffective counsel may render a guilty plea invalid. See Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992). To prevail in his petition, Wang must demonstrate that his counsel's representation "fell below an objective standard of reasonableness . . . [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In the context of guilty pleas, this means that petitioner has to show that he would not have "pleaded guilty and would have insisted on going to trial." Id. at 59.

Wang's claim of ineffective assistance of counsel prior into entering into the plea fails both prongs of Strickland.

The Supreme Court, in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), held that, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." The Second Circuit has also reaffirmed that district courts are "entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator" that the defendant understood the consequences of entering into a plea. United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001).

During the plea colloquy, Wang confirmed that he had the opportunity to discuss his case with his attorney, and that he was fully satisfied with his counsel, whom he consulted regarding the superseding indictment. He also swore that he understood that he did not have to plead guilty even if he *was* guilty, and that at trial, the Government would carry the burden of proving his guilt before a jury beyond a reasonable doubt. Wang represented to the Court that the signed plea reflected his understanding of the agreement with the Government. I explained to him that the crime to which he was pleading guilty carried a maximum ten-year sentence and asked the attorneys to estimate the guideline range of Wang's sentence. The attorneys agreed that it was between 30 and 37 months. After asking for and obtaining clarification of the definition of a "plea," Wang confirmed that he was pleading guilty voluntarily, of his own free will, and without relying on any promises – including promises of a specific sentence – contained outside of the plea agreement.

Wang's allegations in his petition that contradict his representations in court and the affidavits of his trial counsel and interpreters are patently incredible. To credit them, I would have to find that two certified Chinese interpreters, both of whom were used by the Court in this

case (for his co-defendants) and in other cases in the district, as to each for almost twenty years, are not only both wrong in their perception of petitioner's understanding of their Chinese interpretation, but at least one of them is actually lying in denying that she gave legal advice. Moreover, his allegations that court-certified interpreters, without any apparent motive, colluded with his former attorney to push Wang to accept the plea, are far-fetched, to say the least.

Most importantly, a review of the transcript refutes the contention that Wang was somehow a passive object, operating at the behest of his attorney. Contrary to what he asserts now, Wang did not merely answer the Court's questions with a "yes;" on multiple occasions, he gave full responses and asked the Court to repeat or clarify its questions. At the hearing, Wang asked the Court to repeat its questions, see Plea Hearing Tr. at 4, 8, 19, to talk in his right ear, id. at 4, and, when the Court asked him if he had further questions, he responded that he just wanted to be sure that the Court would give him a fair decision, id. at 19. He clarified that he was pleading to dealing in counterfeit goods only at *some* points between 2002 and 2008, not necessarily the whole time, id. at 8, that he put the "Trojan" name on the counterfeit condoms, id. at 21, and confirmed his understanding that he could not appeal his conviction after pleading guilty. Id. at 12. He then pled guilty only after seeking another explanation from the Court about the plea's consequences. Id. at 20. Clearly, Wang was not hesitant about requesting clarification when he was asked questions that he did not fully understand. Indeed, the transcript reflects much more of a dialogue between petitioner and the Court than is often present in Rule 11 plea proceedings, and that dialogue admits no conclusion other than that petitioner understood what the Court was telling him.

Wang's conduct at the hearing also undercuts his claim as he did not show any indication that he was having difficulty understanding his interpreter. This is consistent with Obedin's

sworn statement that he was forthcoming with Wang about the consequences of pleading guilty instead of going to trial, and that he provided Wang with proper representation. It is also confirmed by the interpreter's statement that Wang showed no sign of difficulty communicating with her at the plea hearing or understanding the Court's questions and explanations.

Therefore, the assertions that his attorney did not inform him of the consequences of pleading guilty must be rejected, and, as a result, his claim of ineffective assistance of counsel prior to the plea hearing fails the first prong of Strickland. Cf. United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996) (where defendant claimed ineffective assistance of counsel prior to his plea agreement but was represented by a different attorney at the time of his plea, the guilty plea "effectively waived all ineffective assistance claims relating to events prior to the guilty plea.").

Nor can Wang satisfy Strickland's second prong. He claims that he would not have pled guilty had his trial counsel informed him that a jury would have decided his case and that probation was not available to him. But even if his trial counsel did not apprise him of his basic rights and the risks in pleading guilty, Wang cannot prove prejudice because he was so informed by this Court at the plea hearing. See e.g., Gonzalez v. United States, 10 Civ. 5463, 2010 U.S. Dist. LEXIS 92056, at *3-4 (S.D.N.Y. Sept. 3, 2010) (assuming that counsel did not advise defendant that he could be deported as a result of his guilty plea, defendant not prejudiced because the court advised him of the consequences prior to accepting his plea).

Wang's second premise to show prejudice is equally faulty but for a different reason. He states that he now understands probation was never available to him, and that "at best," he would only be eligible for supervised release. Ironically, his former attorney was correct and Wang is now misinformed. According to the presentence investigation report, he was arrested and released on the same day, making Wang – as a defendant who pled to a crime that carried no

mandatory custodial sentence – eligible for probation. Moreover, Wang's current attorney has apparently not informed him that even if he was eligible for a time served/supervised release sentence instead of probation, there is no practical distinction between the two.[3]

Wang's argument that the representation was ineffective *after* he entered into the plea fails Strickland's second prong. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Assuming that withdrawing the plea would have been advantageous to Wang so that the alleged ineffective assistance caused him prejudice, he has not shown how he would have succeeded in having the plea withdrawn. To withdraw his plea, Wang would have to have given a "fair and just reason" because "[a] defendant has no absolute right to withdraw his guilty plea." United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994). He would bear the burden of "demonstrating valid grounds for relief." United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997). To the extent Wang would have relied on the same assertions he makes now, which contradict his own statements to the Court, Wang would have failed to have his plea withdrawn. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

---

[3] Although at the status conference Wang's new attorney also incorrectly stated that probation was not available for Wang, in her last brief, she is technically correct when she claims that probation was not an option "under the pre-sentencing guidelines." This may be true, but it is hardly relevant; probation was available to Wang because in the post-Booker regime, the sentencing guideline range was not binding on the Court.

Finally, Wang's argument that his attorney was ineffective at the sentencing stage for not

arguing certain mitigating factors fails because Wang has waived his right to bring this claim.

See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004) (holding that if a waiver of a

plea was not a result of ineffective assistance of counsel, then it should be enforced to preclude a

collateral attack of the sentence); see also Formisano v. United States, 03 Cr. 360, 2006 U.S.

Dist. LEXIS 18963, at *4 (S.D.N.Y. Apr. 11, 2006) ("In only very limited circumstances will a

court not enforce a waiver of appellate rights, such as if the petitioner did not make the waiver

knowingly, voluntarily, or competently; the sentence was based on constitutionally

impermissible factors; or the sentencing court failed to explain a rationale for its sentence.")

Wang's argument of ineffective assistance of counsel at sentencing is nothing more than

an attempt to escape an enforceable waiver by collaterally attacking his sentence. Wang has

explicitly waived his right to appeal by a "petition pursuant to 28 United States Code § 2255"

after the Court imposed a term of imprisonment of 41 months or less as provided in the plea

agreement.   At the plea hearing, the Court confirmed Wang's understanding that he could not

"appeal or collaterally attack" a sentence of 41 months or less.  The Court then sentenced Wang

to 37 months.  Thus, Wang is precluded from raising this claim.  See United States v. Djelevic,

161 F.3d 104, 107 (2d Cir. 1998) ("emphatically" rejecting the claim that a waiver in a plea

agreement to appeal a sentence does not apply to the argument of ineffective assistance of

counsel at the sentencing stage); see also See Garcia-Santos v. United States, 273, F.3d 506, 509

(2d Cir. 2001) (per curiam) (holding that a waiver of appeal or collateral challenge barred claims

of error at sentencing when petitioner sought to raise them on a § 2255 challenge to his

sentence); Dawson v. United States, 10-C-0850, 2010 U.S. Dist. LEXIS 113851, at *7-11 (N.D.

Ill. Oct. 26, 2010) (dismissing petitioner's claim that his counsel was ineffective for not arguing

mitigating factors at sentencing because it does not go to the voluntariness of the guilty plea and was therefore waived when he entered the plea).

## II.    A Further Hearing Is Unnecessary

In reaching the conclusion set forth above, I have considered whether a further hearing would be appropriate here and have concluded that it would not.  The filing of a habeas petition pursuant to § 2255 does not automatically entitle a petitioner to a hearing, but if it appears that the petition has merit, a hearing should be held.  See 28 U.S.C. 2255(b); see also R. Gov. Sec. 2255 4(b) ("[t]he court may dismiss the motion without a hearing "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief. . . .").  At the same time, the Supreme Court has cautioned that "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." Machibroda v. United States, 368 U.S. 487, 495 (1962).

Drawing on Machibroda, the Second Circuit has approved an intermediate step between a full evidentiary hearing and a summary dismissal.  See Chang, 250 F.3d 79.  Where a petitioner's claim is not "clearly bereft of merit as to be subject to dismissal on its face" and "involves off-the-record interactions with . . . trial counsel," a district court must have a "hearing" but can structure it in a way that expands the record – by, for example, accepting letters, documentary evidence, and affidavits – without requiring testimony from live witnesses.  Id. at 85.  This "middle road" approach is designed to avoid delay, "the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of

12

other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing." Id. at 86.

In Chang, the intermediate step was appropriate even though the Court conceded that the credibility of the petitioner and his trial counsel could have been further tested in a live hearing. The Court held that it was within the district court's discretion to discredit petitioner's allegations on his submissions alone because they were "based solely on his own highly self-serving and improbable assertions" and contradicted the trial counsel's affidavit. Id.

The Second Circuit has further clarified the standard in Puglisi, 586 F.3d 209. The Court likened the process for determining whether a hearing is necessary to a summary judgment proceeding in a civil case. But the Court observed two significant distinctions, one of which involves the assumption of truth of petitioner's allegations: unlike in summary judgment, the Court explained, a district court deciding whether a hearing is necessary, "need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Id. at 214.

As in Chang, Wang's claims are based exclusively on his self-serving and incredible assertions, namely that two court-certified Mandarin interpreters with decades of court interpretation experience are inadequate Mandarin translators, that they were both mistaken in their impressions that he understood them, and that at least one of them and his former attorney are lying. They would require the Court to make these findings despite the undisputed fact that petitioner never called their inadequacy to the Court's attention – nor even, according to his own statements, his attorney's attention – until after he was sentenced. More importantly, Wang's allegations are also clearly belied by the record of the underlying criminal proceeding. See e.g., Contino v. United States, 535 F.3d 124 (2d Cir. 2008); Frederick v. Warden, Lewisburg Corr.

Facility, 308 F.3d 192 (2d Cir. 2002). As the transcript indicates, he was actively engaged at the plea hearing, showing both comprehension and the ability to communicate with the Court.[4]

A full-fledged hearing would therefore "add little or nothing to the written submissions." Chang, 250 F.3d at 86. Wang's incredible allegations might or might not be sufficient to get past summary judgment in a civil case – I certainly have my doubts that he could raise a "genuine" issue of material fact, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). But as Puglisi teaches, I do not have to assume those allegations to be true if they are contradicted by credible evidence and by the record. Doing so would lead to the type of delay, needless expenditure of judicial resources, and burden of the Government and trial counsel (as well as the interpreters in this case), that the Second Circuit has allowed district courts to avoid.

## CONCLUSION

For the reasons set forth above, the petition is denied and the case is dismissed. Because "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citation and quotation marks omitted), a certificate of appealability shall issue only with regard to the question of whether an

---

[4] Wang states that he is "hesitant to confirm" that "Lau" was the interpreter who advised him to accept the plea agreement because there is an ambiguity in the English spelling of her name. He argues that this is a factual issue that mandates holding an evidentiary hearing. In his petition, Wang describes a conversation he had with the interpreter when he drove her to a local Long Island Railroad station during which she allegedly offered her advice – a conversation that the Government represents Lau remembers as well. Although this portion of Lau's response does not appear in her affidavit, because Wang does not directly dispute Government's representation that the correct interpreter submitted the affidavit, I am satisfied that Wang's "hesitancy" does not create the type of factual question that would necessitate live testimony.

14

evidentiary hearing was required under the circumstances of the case. <u>See</u> 28 U.S.C. § 2253(c).

No certificate of appealability is granted with respect to any of petitioner's substantive claims.

**SO ORDERED.**

_/s/_

_____
U.S.D.J.

Dated: Brooklyn, New York
      January 7, 2011